**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSIE BADGER, individually and on behalf of all others similarly situated, | : : : | Case No. |
| Plaintiff, | : : : | |
| v. | : : : | **FILED ELECTRONICALLY** |
| | : : : | |
| FOUR CORNERS PROPERTY TRUST, INC.; FOUR CORNERS OPERATING PARTNERSHIP, LP; and, FOUR CORNERS GP, LLC, | : : : : : | |
| Defendant. | : : | |

**CLASS ACTION COMPLAINT**

COMES NOW, Josie Badger ("Plaintiff"), on behalf of herself and all others similarly situated and alleges as follows:

**INTRODUCTION**

1.      Plaintiff brings this action individually and on behalf of all others similarly situated against Four Corners Property Trust, Inc. ("FCPT"); Four Corners Operating Partnership, LP ("Four Corners OP"); and, Four Corners GP, LLC ("Four Corners GP") (collectively "Defendants"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, (the "ADA") and its implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel (collectively the "parking facilities") at various public accommodations owned, operated, controlled and/or leased by Defendants ("Defendants' facilities").

2.      Plaintiff Josie Badger has a mobility disability and is limited in the major life activity of walking, which has caused her to be dependent upon a wheelchair for mobility.

3.     Plaintiff has visited Defendants' facilities and was denied full and equal access as a result of Defendants' inaccessible parking lots and paths of travel.

4.     Plaintiff's experiences are not isolated—Defendants have systematically discriminated against individuals with mobility disabilities by implementing policies and practices that consistently violate the ADA's accessibility guidelines and routinely result in access barriers at Defendants' facilities.

5.     In fact, numerous facilities owned by Defendants have parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized policies and practices Defendants employ allow architectural barriers to develop and persist at Defendants' facilities.

6.     Unless Defendants are required to remove the access barriers described below, and required to change their policies and practices so that access barriers do not reoccur, Plaintiff and the proposed Class will continue to be denied full and equal access to those facilities as described, and will be deterred from fully using Defendants' facilities.

7.     The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action.  In relevant part, the ADA states:

> [i]n the case of violations of…this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the…modification of a policy….

42 U.S.C. § 12188(a)(2).

8.     Consistent with 42 U.S.C. § 12188(a)(2) Plaintiff seeks a permanent injunction requiring:

a)  that Defendants remediate all parking and path of travel access barriers at their facilities, consistent with the ADA;

2

b) that Defendants change their corporate policies and practices so that the parking and path of travel access barriers at its facilities do not reoccur; and,

c) that Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 5(a) and 5(b) has been implemented and will remain in place.

9.    Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals.  To that end, the note to the 1996 amendment to Rule 23 states:

Subdivision(b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate….Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

10.    The ADA was enacted over a quarter century ago and is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).

11.    The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

12.    Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations,  42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly, or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to

participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

13.    Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability.  42 U.S.C. § 12182(b)(1)(D).

14.    Title III and its implementing regulations define discrimination to include the following:

   a)  Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 CFR § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

   b)  Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

   c)  For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

   d)  Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

15.    The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183.  42 U.S.C. 12188(a)(1).

16.    The ADA also provides for specific injunctive relief, which includes the following:

In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required

4

by this subchapter.   Where appropriate, injunctive relief shall also include…modification of a policy…to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

## JURISDICTION AND VENUE

17.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

18.     Plaintiff's claims asserted herein arose in this judicial district and Defendants do substantial business in this judicial district.

19.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

20.     Plaintiff Badger is and, at all times relevant hereto, was a resident of the Commonwealth of Pennsylvania.  As described above, as a result of her disability, Plaintiff Badger relies upon a wheelchair for mobility.  She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

21.     Defendants are headquartered at 501 Redwood Highway, Suite 1150, Mill Valley, California 94941.

22.     Substantially all of Defendant FCPT's business is conducted through Defendant Four Corners OP, a Delaware limited partnership of which FCPT is the initial limited partner and FCPT's wholly owned subsidiary, Defendant Four Corners GP, is its sole general partner.

23.     Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

**I.      Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities.**

24.      Plaintiff has visited Defendants' properties located at 1010 Pittsburgh Mills Boulevard, Tarentum, Pennsylvania and at 8400 McKnight Road, Pittsburgh, Pennsylvania (collectively the "Subject Properties"), where she experienced unnecessary difficulty and risk due to excessive slopes in Defendants' parking facilities.

25.      As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded.

26.      Plaintiff Badger lives north of Pittsburgh, Pennsylvania in the Ellwood City/Wampum area and travels throughout the region frequently, and Plaintiff intends to return to the Subject Properties.

27.      Furthermore, Plaintiff intends to return to Defendants' facilities to ascertain whether those facilities remain in violation of the ADA.

28.      Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities, however, so long as Defendants' facilities remain non-compliant, and so long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at its facilities.

29.      Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendants' facilities in violation of her rights under the ADA.

30.      As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendants, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

6

**II.     Defendants Repeatedly Deny Individuals With Disabilities Full and Equal Access to its Facilities.**

31.     Defendants are engaged in the ownership, acquisition and leasing of restaurant and other food service-related properties on a triple-net basis.

32.     According to Defendant FCPT's most Form 10-K filed with the Securities and Exchange Commission, Defendants lease 418 of their 424 properties to Darden Restaurant's, Inc. ("Darden") through triple-net lease arrangements under which Darden is primarily responsible for ongoing costs relating to the properties, including utilities, property taxes, insurance, common area maintenance charges, and maintenance and repair costs.  *See* Four Corners Property Trust, Inc. Form 10-K for the fiscal year ended December 31, 2015, available at www.snl.com/Cache/c33494777.html (last accessed December 6, 2016).

33.     With respect to Defendants' tenant base, Darden constitutes approximately 99% of the properties Defendants own, and Defendants are dependent on Darden for substantially all of their leasing revenue.  *See id.*

34.     To date, Defendants' policy and practice of leasing their properties to Darden, and obligating Darden to operate and maintain Defendants' properties, has resulted in systematic and routine violations the ADA by allowing architectural barriers to develop and persist within the parking facilities of Defendants' properties.

35.     On Plaintiff's behalf, investigators examined multiple locations owned by Defendants, and found the following violations, which are illustrative of the fact that Defendants' leasing policy routinely allows architectural barriers to persist in its parking facilities:

    a)  Olive Garden, 770 SE Oralabor Road, Ankeny, IA

        i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

        ii.  The surfaces of one or more access aisles had slopes exceeding 2.1%; and

   iii.   The landing at the top of the curb ramp had a slope exceeding 2.1%.

b)  Olive Garden, 3600 Westown Parkway, West Des Moines, IA

   i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%; and

   iii.   No spaces were designated as "van accessible" at one or more groups of purportedly accessible parking spaces.

c)  Olive Garden, 1010 Pittsburgh Mills Boulevard, Tarentum, PA

   i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%;

   iii.   A portion of the route to the store entrance had a cross slope exceeding 2.1%; and

   iv.   The landing at the top of the curb ramp had a slope exceeding 2.1%.

d)  Olive Garden, 5163 State Route 30, Greensburg, PA

   i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%; and

   iii.   One or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface or the parking area.

e)  Olive Garden, 8400 McKnight Road, Pittsburgh, PA

   i.   The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

   ii.   The surfaces of one or more access aisles had slopes exceeding 2.1%.

36.   The fact that individuals with mobility-related disabilities are denied full and equal access to numerous of Defendants' facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced

8

is not isolated, but rather, caused by Defendants' systemic disregard for the rights of individuals with disabilities.

37.     Defendants' systemic access violations demonstrate that Defendants' policies and practices that allow architectural barriers to develop and persist in its parking facilities.

38.     As evidenced by the widespread inaccessibility of Defendants' parking facilities, absent a change in Defendants' corporate policies and practices, access barriers are likely to reoccur in Defendants' facilities even after they have been remediated.

39.     Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendants' facilities and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility to affect Defendants' network of facilities.

## CLASS ALLEGATIONS

40.     Plaintiff brings this class action, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of herself and the following nationwide class: all wheelchair users who have attempted, or will attempt, to utilize the parking facilities at all locations within the United States for which Defendants own and/or control the parking facilities.

41.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

42.     Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

43.     Common Questions of Fact and Law:    There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

44.     Adequacy of Representation:    Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

45.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

## SUBSTANTIVE VIOLATION

46.     The allegations contained in the previous paragraphs are incorporated by reference.

47.     Defendants' facilities were altered, designed, or constructed, after the effective date of the ADA.

48.     Defendants' facilities are required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs.  42 U.S.C. § 12183(a).

49.     Further, the accessible features of Defendants' facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.  28 U.S.C. § 36.211.

50.     The architectural barriers described above demonstrate that Defendants' facilities were not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs, and/or that Defendants' facilities were not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

51.     Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers, as required by 42 U.S.C. Section 12182(b)(2)(A)(iv).

52.     Defendants' repeated and systemic failure to ensure that their facilities are readily accessible to and usable by individuals with disabilities constitutes unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

53.     Defendants' facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

54.     Defendants are required to provide individuals who use wheelchairs full and equal enjoyment of their facilities.  42 U.S.C. § 12182(a).

55.     Furthermore, Defendants cannot deny individuals with disabilities full and equal enjoyment of Defendants' facilities indirectly through contracts or other arrangements.  42 U.S.C. § 12182(b)(1).

56.     Defendants have failed, and continue to fail, to provide individuals who use wheelchairs with full and equal enjoyment of their facilities.

11

57.     Defendants have discriminated against Plaintiff and the Class in that they have failed to make their facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

58.     Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

59.     Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the Class.

60.     Given that Defendants have not complied with the ADA's requirements to make their facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the class, prays for:

a.      A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b) which directs Defendants to:  (i) take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii)  that Defendants change their corporate policies and practices to prevent the reoccurrence of access barriers post-remediation; and, (iii) that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.      An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representatives and appointing her counsel as class counsel;

d.      Payment of costs of suit;

e.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f.      The provision of whatever other relief the Court deems just, equitable and appropriate.


Dated:  December 7, 2016                          Respectfully Submitted,

                                                 By: */s/ Benjamin J. Sweet*
                                                 Benjamin J. Sweet (PA 87338)
                                                 Edwin J. Kilpela (PA 201595)
                                                 Stephanie K. Goldin (PA 202865)
                                                 **CARLSON LYNCH SWEET**
                                                 **KILPELA & CARPENTER, LLP**
                                                 1133 Penn Avenue, 5th Floor
                                                 Pittsburgh, PA 15222
                                                 (p) 412.322.9243
                                                 (f) 412.231.0246